**TEXAS EMPLOYERS INS. ASS'N v. AGAN.**

No. 2946.

Court of Civil Appeals of Texas. Eastland.

Oct. 24, 1952.

Rehearing Denied Nov. 14, 1952.

744

Marvin Sprain and McMahon, Springer, Smart & Walter, Abilene, for appellant.

Caldwell, Baker & Jordan, Dallas, for appellee.

GRISSOM, Chief Justice.

This is a workmen's compensation case. The jury found the employee (1) "sustained an injury to his body" on August 11, 1950 (2) "in the course of his employment with Waco-Tex Materials Company," causing total temporary incapacity. Judgment was rendered for the employee and the insurance carrier has appealed.

Appellant's first two points are that the court erred in overruling its exceptions to issue one and to the entire charge and in refusing to submit its requested issue 1-a, inquiring whether Agan's injury, if any, was caused by an accident. Appellant's exceptions and requested issue and said points are based on the contention that whether the injury was accidental was a separate ultimate fact issue under the pleadings and evidence and, further, that appellee could not recover without a jury finding that the injury was caused by an accident.

Appellee alleged that at the time he was injured he was an employee of Waco-Tex Materials Company within the meaning of the Workmen's Compensation Law, Vernon's Ann.Civ.St. art. 8306 et seq.; that, in the course of his employment, on August 11, 1950, while working for said employer at its rock crusher and while he was bending forward driving a pin into the track of the tractor, the tractor operator dropped the bucket, or shovel, striking Agan about the back and causing the injury alleged. Appellant's original answer consisted of a general denial and an allegation that Agan did not sustain total incapacity but, if any, merely partial incapacity, and that the insurer had paid him compensation benefits for twenty-seven weeks, which operated to fully discharge its liability. By supplemental answer, it alleged that Agan's incapacity, if any, was due solely to previous injuries for which he has received compensation. In the alternative, it alleged that the previous injuries contributed to Agan's present incapacity and that his present incapacity, if any, was due solely to disease or a congenital condition. Neither party alleged Agan's injuries were caused by an accident. Appellant did not allege that Agan's injuries were intentionally caused by either a third person or the appellee. See Art. 8309, Sec. 1.

Appellee's evidence tended to show that he suffered an injury arising out of his employment while acting in the course thereof at the time and in the manner alleged by him. Appellant attempted to prove that Agan was not struck by the bucket, in other words, that he was not injured at the time and place alleged; that he had been in several foreign hospitals and had arthritis when he was discharged from the army in 1945, and that the government had paid him for fifty percent

disability, which was later reduced to twenty percent and finally to ten percent. In other words, appellant's contention on the trial, in addition to the contention that he was not injured in August, 1950, was that appellee's present incapacity, if any, was caused by, or contributed to, by a prior injury or disease, not that the alleged injury was intentional.

No evidence has been pointed out which suggests that appellee sustained an injury at any other time or place or in any manner other than as alleged and testified to by him, except that he was in hospitals during the war and had arthritis and an affected vertebra when he was discharged from the army in 1945.

Appellee testified that while he was driving a pin in the track of the tractor, the operator swung the bucket and hit him in the back. Although no other witnesses testified they actually saw the shovel, or bucket, strike Agan, the circumstances testified to by others tend to corroborate his testimony.

We have found no provision in our workmen's compensation statutes making the finding of an "accident" a prerequisite to collection of compensation. Art. 8306, Sec. 1, provides that in an action for damage "for personal injuries sustained by an employe in the course of his employment * * * it shall not be a defense: 1. That the employe was guilty of contributory negligence. 2. That the injury was caused by the negligence of a fellow employe. 3. That the employe had assumed the risk of injury incident to his employment". But, it does provide that the employer may defend such an action on the ground that the injury was caused by the "willful intention of the employe to bring about the injury, or was so caused while the employe was in a state of intoxication." Neither of these defenses, nor any of those set out in Art. 8309, Sec. 1, was alleged or proved.

Art. 8309, Sec. 1, R.S.1925, provided: "The term 'injury' or 'personal injury' shall be construed to mean damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom.

"The term 'injury sustained in the course of employment,' as used in this law, shall not include:

"1. An injury caused by the act of God, unless the employe is at the time engaged in the performance of duties that subject him to a greater hazard from the act of God responsible for the injury than ordinarily applies to the general public.

"2. An injury caused by an act of a third person intended to injure the employe because of reasons personal to him and not directed against him as an employe, or because of his employment.

"3. An injury received while in a state of intoxication.

"4. An injury caused by the employe's willful intention and attempt to injure himself, or to unlawfully injure some other person, *but shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employe while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere.*" (Emphasis ours.)

Said article was amended in 1943 so that it omitted only the first quoted paragraph, but the identical definition of injury and personal injury omitted was written into the 1947 amendment of Art. 8306, § 20.

Art. 8306, § 25, was amended, 50th Leg. p. 178, Ch. 113, Sec. 7, to provide that the association should not be liable for compensation for occupational disease, unless it should be due to the nature of the employment in which the hazard of such disease actually existed and it was incurred in such employment, and not unless incapacity or death resulted within a certain time "after the last injurious exposure to such disease in such employment".

Sec. 20 of Art. 8306, as amended, provides:

"Wherever the terms 'injury' or 'personal injury', are used in the Workmen's Compensation Law of this state, such terms shall be construed to mean

damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom. Unless from the context the meaning is clearly to the contrary, such terms shall also be construed to mean and include occupational diseases, as hereinafter defined."

In Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S.W. 556, our Supreme Court, in passing on the constitutionality of the workmen's compensation law, said the purpose of the act was to confine its operation to industrial accidents; that for an accidental injury an employee had a cause of action under the common law of which he could be deprived by the legislature, but that it could not deprive him of the right to redress for intentional injury because such right was guaranteed by the constitution.

In Fidelity & Casualty Company of New York v. Neas, 5 Cir., 93 F.2d 137, 138, the court, in denying a contention that for injury to be compensable under the Texas compensation law there must be an "accident" in the work, that is, something that caused unusual exertion or overstrain, said:

"the statute does not require that an accident in that sense must have happened. It does not, as many such statutes do, expressly require that an accident shall have happened. It is true that the Supreme Court in Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S.W. 556, declared that the statute covered only industrial accidents, but it was in order to distinguish willful injuries, the * * * remedy for which was thought guarded by the Texas Constitution. Nothing was intended to be written into the statutory definitions."

It thus appears that the law provides compensation for personal injuries arising out of the employment and sustained by an employee in the course of his employment. Garcia v. Texas Indemnity Co., 146 Tex. 413, 209 S.W.2d 333, 335. But it excludes recovery for injuries caused by (1) an act of God; (2) by the act of a third person intended to injure the employee because of reasons personal to him and not directed against him as an employee, or because of his employment; (3) received while intoxicated, and (4) injuries caused by the employee's willful intention to injure himself, or another, under the circumstances stated in Art. 8309, Sec. 1, paragraphs 1, 2, 3 and 4. "Injury sustained in the course of employment" is expressly made to include "all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employe while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere." Art. 8309, Sec. 1, Acts 1943, 48th Leg., p. 279, Ch. 176. See also Art. 8306, Sec. 1, par. 3, R.S.1925. Those stated above are the only statutory exceptions to the right of an employee to recover compensation for an injury originating in the business of his employer and sustained in the course of his employment.

In Texas Employers' Ins. Ass'n v. Parr, Tex.Com.App., 30 S.W.2d 305, 308, the case was submitted to the jury in substantially the same manner as in this case. There was no issue submitted inquiring whether the employee suffered an "accidental" injury. The court said:

"In section 1, article 8309, the term 'injury sustained in the course of employment,' as used in this law, means any and all injuries except the four designated in this section".

The four designated in said section are (1) act of God, (2) intentional injury by third person, (3) injury while intoxicated and (4) injury caused by the employee's willful intention.

In Southwestern Surety Ins. Co. v. Owens, Tex.Civ.App., 198 S.W. 662, 664 (Writ Ref.) appellant contended the evidence failed to show the employee suffered an accidental injury in the scope of his employment, there being nothing unusual or unexpected in the circumstances in which the hemorrhage occurred which caused death. The court said:

"The only portion of the act which designates the injuries to which the act

applies as accidental is the emergency clause, which declares the aim of the act to be the protection by adequate law of the rights of employes injured in 'industrial accidents' and the beneficiaries of such employes as may be killed in such accidents. It is, we think, clear that the injuries referred to in the act are designated accidents only as contradistinguished from intentional injuries".

The court then proceeded to point out that the English workmen's compensation law and those of some states expressly provide for compensation only for injuries suffered by "accident" but that the Texas act does not.

In Garcia v. Texas Indemnity Ins. Co., 146 Tex. 413, 209 S.W.2d 333, 337, there was submitted an issue on accidental injury but the court did not have under consideration the question here presented. It held that a person who had an epileptic seizure while in the course of his employment and was killed by jumping against an iron post at the place of his work was entitled to compensation, although striking the post was due to the seizure. The court said:

"Since there is no claim that the fall was caused by any third person's intention or by Garcia's intoxication, we must hold that the cause of his fall is immaterial.

"Under the circumstances stated, it follows that since the fall resulted in an injury which was in turn a producing cause of his death, his death is compensable, although the fall may have been due to a pre-existing idiopathic condition."

In Maryland Casualty Co. v. Guzman,. Tex.Civ.App., 79 S.W.2d 330, the Court of Civil Appeals on motion for rehearing reversed the judgment, holding that the employee's beneficiaries were not entitled to recover in the absence of a finding that the employee's death was caused by an "accidental" injury. The jury had found (5) that the employee, on the date alleged, received an injury in the course of his em-

ployment; (9) that his death was not due to a cause other than an injury sustained by him while engaged in the performance of his duty for his employer and (10) that his death was not due to a heart disease of long duration. Issues 9 and 10 were submitted at the request of the insurance company and it also requested the submission of issues (7) whether heart disease was the sole cause of his death and (2) whether his death was caused by an "accidental" injury.

The Supreme Court held that the findings mentioned were sufficient to sustain the judgment; that the insurance company was not in a position to complain of the refusal to submit requested issues 7 and 2 "more specific in terms, relating to the same question." Whereupon, it reversed the judgment of the Court of Civil Appeals. See Guzman v. Maryland Casualty Co., 130 Tex. 62, 107 S.W.2d 356, 357.

Of course, by pleading and introducing proof to support the defenses set out in the statutes it might become material for the jury to find whether there was an "accidental" injury. For illustration, where the defense was that the injury was caused by the employee's willful and intentional attempt to injure himself.

In Highway Ins. Underwriters v. Le Beau, Tex.Civ.App., 184 S.W.2d 671, 673, the Court of Civil Appeals held that the fact that the jury found the deceased sustained an injury to the physical structure of his body simultaneously with his death did not remove the necessity of a further finding that the injury was accidental in order to warrant a recovery. The insurer had expressly pleaded that death was due to natural causes and not accidental injuries. The Supreme Court held that the trial court erred in rendering judgment on an incomplete verdict. Incomplete because the jury did not answer the defensive issue pleaded by the insurance company and submitted in two issues inquiring (1) whether death was the result of natural causes and (2) whether it was caused by an accident. But, the Supreme Court said it was not necessary to submit both of said issues; that, "In effect they submit the same defense and it should not be split up into two special issues." Le

Beau v. Highway Ins. Underwriters, 143 Tex. 589, 187 S.W.2d 73, 74. Of course, if the employee's death was caused by natural causes, not by an injury sustained in the course of his employment, his beneficiaries could not recover compensation for his death. This holding is substantially the same as the holding in the Guzman case, supra. But, regardless of what the general rule should be, there was no evidence in this case giving rise to any of the statutory exceptions to liability for harm to the physical structure of the body of the employee, originating in the business of the employer and incurred in the course of his employment, from which a fact issue as to an "accidental" injury could arise. If Agan was injured as he alleged and testified, he was entitled to compensation unless his incapacity was due solely to disease or a congenital condition, as appellant alleged. A finding that an injury was caused by an accident is not always a prerequisite to recovery of compensation. Here, there was neither pleadings nor evidence raising an issue as to whether Agan's injury, if any, on August 11, 1950, was accidental. Fidelity Union Casualty Company v. Martin, Tex. Civ.App., 45 S.W.2d 682 (Writ Dis.). Points one and two are overruled.

Appellant's points three and four are that the judgment should be reversed because plaintiff's exhibits 1, 2 and 3 were admitted and Agan was permitted to testify about them and point to them while testifying about the manner in which he was injured over appellant's objection that they were taken long after the alleged injury and show Agan posing near a large and dangerous appearing machine and because the photographs did not accurately portray the position of the machine or Agan at the time he was injured.

Picture number 1 is of the bucket, or shovel, with Agan standing beside it. Number 2 appears to be of the same thing with the bucket raised. Number 3 is a picture of the front of the tractor with Agan standing in front of it in approximately the position he testified he was in when struck by the bucket. The record shows that appellant stated there was no objection to exhibits 4, 5 and 6, which were photographs of the same equipment, but it objected to exhibits one to three, inclusive, on the ground that it was an attempt to re-create a scene; that it was taken a year after the alleged accident and Agan was attempting to bolster his testimony as to "what happened down there." To exhibit 3 the additional objection was made that Agan had admitted it did not truly show the position of Agan or the equipment when he was injured. Agan identified the tractor and the bucket which he said hit him. He testified that exhibit 2 was a picture of a part of the terrett, "and it shows where I was standing; that it is me myself standing at the shovel." Agan testified that the pictures show approximately the position he was in when injured "except that I was. leaning over a little bit"—"except I was stooped a little more than that driving the pin back in." As to the position of the cab, he was asked if that was approximately the position he was in when injured, to which he answered, "Yes, sir. It is the same place except I was leaning over a bit * * *." He was asked whether exhibit 3 showed the exact position of the terrett and shovel "and the way it was when you were injured." He answered, "No," that it was turned too far to the left, that it should be turned more toward the center.

▉ "The fact that there have been changes in conditions, including even substantial changes, will not necessarily exclude a photograph where the changes can be and are explained, so that the photograph, as explained, will give a correct understanding of the condition existing at the time to which the controversy relates, and be practically instructive." 32 C.J.S., Evidence, § 715, p. 623.

▉ " * * * slight changes will not render the photographs inadmissible and the court has considerable discretion as to the admission of photographs notwithstanding the change." 9 A.L.R.2d 907, § 4.

"The question is not whether or not he acted wisely in allowing this picture

to become part of the evidence but the question for us to decide is, did he abuse his discretion by doing so?" Richardson v. Missouri-K.-T. R. Co., Tex.Civ.App., 205 S.W.2d 819, 824 (Writ Dis.). See also Dallas Railway & Terminal Co. v. Durkee, Tex.Civ.App., 193 S.W.2d 222, 229 (RNRE).

■ The rules thus stated are in accord with the majority of the decisions, and, we think, are correct. It appears that any difference in the position of Agan and the instruments at the time of his alleged injury and when the pictures were made were pointed out and explained when the pictures were introduced. We do not think there is any showing of probable injury. The objections go more to the weight of the evidence than to its admissibility. Their admission was a matter for the trial court's discretion, which is not shown to have been abused. The points are overruled.

■■ Appellee was permitted to testify, over appellant's objection, that it was a "conclusion", that he was not then able to work. This was not error. Texas Employers' Ins. Ass'n v. Long, Tex.Civ.App., 180 S.W.2d 629, 632 (RWM). Also, permitting a lay witness to testify that Agan appeared to have a stiff back was not error. Shuffield v. Taylor, 125 Tex. 601, 83 S.W.2d 955, 958; 19 Tex.Jur. 354; General Life Ins. Co. v. Potter, Tex.Civ.App., 124 S.W. 2d 409, 411.

■ Points seven to ten, inclusive, are overruled. Error in failing to submit appellant's affirmative defenses is not shown. Appellant alleged that appellee's incapacity was due solely to disease or a congenital condition. There was no evidence relative to a disease, except arthritis, and an issue relating thereto was submitted. There was no evidence which would have supported an issue relating to a congenital condition. Appellant's evidence was that Agan's condition was not congenital.

We have carefully considered all of appellant's points and have concluded reversible error is now shown.

The judgment is affirmed.